## Timothy P. Ide *vs.* Edward D. Pearce & another.

Land conveyed was described in the deed, after an accurate description of its boundaries from its northern extremity around its western and southern sides to a point on the east at the K. road; "thence turning and running northerly, bounding easterly by said road until it comes to land of B.; thence turning and running westerly by land of said B. until it comes to the southeasterly corner of an acre lot " included in the land conveyed; " thence turning and running northerly, bounding easterly by said B.'s land to the W. road; thence turning and running westerly, bounding northerly by said road, to the place of beginning." The K. road extended northeastwardly until it joined the W. road, which ran from northeast to southwest. On the southwesterly side of the W. road, between that junction and the point of beginning of the description, were three lots, equal

in depth; the widest, known as the L. lot, next the K. road; then a lot of B., and then the acre lot. B. owned all the land abutting on the opposite side of this part of the W. road. The deed referred to the grantor's sources of title, and a plan, none of which included the L. lot. *Held*, that the L. lot did not pass by the deed.

ACTION OF TORT for breaking and entering the plaintiff's close in Seekonk, known as the Lindsey Lot, and carrying away hay. Answer, title in the defendants. Trial before *Dewey, J.,* who reserved the question of title for the decision of the whole court upon the following case :

Prior to the 5th of July 1853, the plaintiff was seised in fee of a tract of land in Seekonk, southeastwardly from the dwelling-house of the late Hon. Tristam Burges, and bounded on the north by a road from India Bridge to Warren; on the west by a highway and driftway extending to Providence River; on the south by Providence River and Bowers's Cove ; and on the east by land of David Humphrey, land of John T. Ingraham, and the Kettle Point Road, excepting therefrom the lot marked "Burges," but including the lot marked " Lindsey " on the plan in the margin, which shows so much of the tract as is necessary to the understanding of this case.* Said Burges owned the "Burges " lot, and also the land on the opposite side of the Warren Road.

On the 3d of July 1853 the plaintiff conveyed to John Wilson Smith (whose title the defendants now had,) by the following

description : " Beginning at the northwest corner of a lot of land containing about an acre, at the junction of the road leading easterly from India Bridge to Warren with the road or highway running southerly, opposite the farm house of Tristam Burges, and from that point running southerly to Providence River, bounding westerly on said highway, and a driftway two rods wide, laid out between the land of the grantor and land of Tristam Burges, as is delineated and described on a plat of the Lyon Farm, surveyed by Daniel Anthony, January 20th 1802; from thence bounding southerly by the Providence River, with and along the shore of said river, around the point of land at the mouth of Bowers's Cove, and thence with and along the shore of said Bowers's Cove until it comes to land of David Humphrey; thence turning and running northerly, bounding easterly by land of said Humphrey and John T. Ingraham, to the northwest corner of said Ingraham's land, which he recently bought of the grantor; thence turning and running easterly, bounding southerly by said Ingraham's land, to the road leading to Kettle Point; thence turning and running northerly, bounding easterly by said road, until it comes to land of Tristam Burges; thence turning and running westerly, bounding northerly by land of said Burges, until it comes to the southeasterly corner of the acre lot first mentioned; thence turning and running northerly, bounding easterly by said Burges's land, to the Warren road; thence turning and running westerly, bounding northerly by said road, to the place of beginning. Containing, by estimation, about one hundred and eighty acres of land, with a dwelling-house, six barns and other improvements thereon." " The estate hereby conveyed being the several parcels' or lots of land purchased and held " by the grantor under certain deeds particularly described, and under his father's will. " To which deeds, will and plat aforesaid reference may be had," and in none of which was the Lindsey lot particularly described. That lot was meadow, and separated from the other lands by a fence.

The question between the parties was, whether the Lindsey lot passed by the deed from the plaintiff to Smith. The only boundaries in dispute were from the end of the course " to the

road leading to Kettle Point" to "the southeasterly corner of the acre lot."

*J. H. Clifford & E. H. Bennett,* for the plaintiff, cited *Sawyer* v. *Kendall,* 10 Cush. 241; *Ricker* v. *Barry,* 34 Maine, 116; *Haynes* v. *Young,* 36 Maine, 557; *Peaslee* v. *Gee,* 19 N. H. 273; *Benedict* v. *Gaylord,* 11 Conn. 336; *Thatcher* v. *Howland,* 2 Met. 41; *Bosworth* v. *Sturtevant,* 2 Cush. 392; *Ipswich, petitioners,* 13 Pick. 431; *Knight* v. *Wilder,* 2 Cush. 210; *Lunt* v. *Holland,* 14 Mass. 149.

*E. Ames & B. Sanford,* for the defendants. After coming " to the road leading to Kettle Point," the boundary line proceeds, " thence turning and," 1st, " running northerly," 2d, " bounded easterly by said road," 3d, " until it comes to land of Tristam Burges." This is fully satisfied by running to the place where the two roads meet; for Burges owned the land on the opposite side of the Warren Road, and consequently the fee to the centre of the road, subject to the public easement. " Thence," 1st, " turning and," 2d, " running westerly," 3d, " bounding northerly by land of said Burges, until it comes to the southeasterly corner of the acre lot." All these calls also are satisfied by turning at right angles, and running in a general westerly direction, at first northwesterly by the land of Burges over which the Warren Road is laid, then southwesterly by the Burges lot, then northwesterly again by said lot to the corner of the acre lot.

Or the boundary in dispute, with fewer inconsistencies than by the plaintiff's construction, may be interpreted as " running northerly " — first northeasterly, then northwesterly, but, taken together, exactly northerly — " bounded easterly by said roads," to wit, the Kettle Point and Warren Roads, [ *Clifford.* The next preceding other road is the one "running southerly to Providence River,"] " until it comes to land of Tristam Burges," namely, the Burges lot on the plan; " thence turning and running westerly " — northwesterly and southwesterly, but in general exactly westerly, — " bounding northerly by land of said Burges," to the corner of the acre lot.

The plaintiff's construction is inadmissible, because it excludes the Lindsey lot, so called, owned by the grantor, contrary

to the general description, which purports to convey an entire tract, without any reservation, and bounding on the north only on land of Burges; and because by it the eastern boundary does not continue " by said road until it comes to land of Tristam Burges," nor, on reaching land of Burges, " thence turn and run westerly ; " but turns at a right angle on reaching the Lindsey lot, without any call in the deed; and then runs westerly instead of northerly, to land of Burges ; and on reaching it instead of turning as required by the deed, keeps on in th same course.

The reference to former conveyances cannot control, for the benefit of the grantor, a description which answers all the abuttals or calls. *Talbot* v. *Copeland*, 32 Maine, 252. *Lincoln* v. *Wilder*, 29 Maine, 181, 183. *Sawyer* v. *Kendall*, 10 Cush. 241. *Melvin* v. *Proprietors of Locks & Canals*, 5 Met. 15.

THOMAS, J. Whether upon the true construction of the deed of the plaintiff to Smith (the defendant's grantor) it includes the Lindsey lot is the only question in the case. The land conveyed is first described by metes and bounds, and then by reference to the deeds and will by which the grantor obtained his title. If the first description is plain and unequivocal it should govern, though it is difficult to say that there is more than one rule of construction that has not its exceptions ; and that is, taking the whole instrument together, what does it mean ?

The description by metes and bounds in this deed is an impossible description. Its lines cannot be run. The parties agree upon the boundaries as marked upon the plan, extending from the point of beginning to the Kettle Point Road. Beyond this no way is open to the point of departure. The way indicated by the deed is " northerly, bounded easterly by said road, until it comes to land of Tristam Burges." There is no land of Burges in that direction until you have crossed the road leading from India Bridge to Warren, and when you have got there, there is no way of return. The deed invites us to turn and run westerly, bounded northerly by land of said Burges, to the southeast corner of the acre lot. You cannot follow the line and reach the point proposed. The ingenuity of counsel has

not been able to thread the way. It is blocked by two right an-
gles, and a part of the distance can have no land of Burges as
the northern boundary.

It is a plain case of false demonstration. The scrivener evi-
dently supposed that the land of Burges extended to the Kettle
Point Road and included the Lindsey lot. He clearly had no
idea that he was including it within the bounds of the grant.

Running the line to the southeasterly corner of the Lindsey
lot, and then turning and running westerly, the lines meet and
are welded outside of the land in controversy.

We turn to the other parts of the deed for relief, and find that
in the plat of the Lyon farm, and the deeds and will under
which the grantor held, the Lindsey lot was not included.

Looking at the whole instrument, and seeking for the intent
of the parties by the best lights we have, we are satisfied the
Lindsey lot did not pass by the deed of Ide to Smith. *Parks* v
*Loomis*, 6 Gray, 467. *Kendall* v. *Brown*, 7 Gray, 210.

*Judgment for the plaintiff*